(683 P.2d 454)

No. 56,050

BERNARD G. GONZALES and LAWANA L. GONZALES, *Plaintiffs*, v. GARY T. CALLISON and JUANITA R. CALLISON, *Defendants* and *Third-Party Plaintiffs/Appellees*, v. MARLYS MAJORS and SALLY PARKER, d/b/a D. C. CLARK REAL ESTATE COMPANY, *Third-Party Defendants/Appellants*, and DIRECTOR of KANSAS REAL ESTATE COMMISSION, *Intervenor/Appellant*.

Opinion filed June 21, 1984.

*Rodney R. Peer*, of Blase and Peer, P.A., of Wichita, for appellants Marlys Majors and Sally Parker, d/b/a D. C. Clark Real Estate Company.

*Thomas E. Wright*, of Goodell, Stratton, Edmonds, Palmer & Wright, of Topeka, for appellant Director of Kansas Real Estate Commission.

*David G. Crockett*, of Crockett & Gripp, of Wichita, for appellees.

Before ABBOTT, P.J., MEYER and BRISCOE, JJ.

ABBOTT, J.: This is an appeal by the Director of the Kansas Real Estate Commission (Director) and others in a Chapter 61 case. The trial court ordered the Director to pay Gary T. Callison and Juanita R. Callison the sum of $1,528.50 from the Real Estate Recovery Revolving Fund.

Highly summarized, the facts are as follows: Gary T. Callison

and his wife, Juanita R. Callison, bought a home from the D. C. Clark Real Estate Company (Clark Realty). Approximately five years later the Callisons decided to sell the home. At all times material to this case, Gary T. Callison was a licensed real estate salesman with Clark Realty. The Callisons signed an agreement giving an exclusive listing to Clark Realty.

Marlys Majors, one of the owners of Clark Realty, prepared the exclusive listing and testified she obtained the information from previous records she had. Her father had purchased the home (a factory-manufactured one) and had installed it on the lot. Majors listed the air conditioning as being central air. The home was bi-level; there were no ducts to the lower level and the unit was not large enough to cool both levels.

The home was sold to Bernard G. Gonzales and Lawana L. Gonzales. The Gonzaleses filed suit against the Callisons, claiming they were told by the Callisons and Clark Realty that the home was equipped with central air conditioning. The Callisons denied making such statement to the Gonzaleses, but claimed the home had central air conditioning. The Callisons then filed a third-party complaint against Marlys Majors and Sally Parker as owners of Clark Realty alleging, in essence, that if incorrect information was given to the Gonzaleses, it was by Clark Realty. Clark Realty answered that if the information concerning the air conditioner was wrong, it was because it had been given the wrong information by the Callisons.

Before trial, Majors and Parker had filed bankruptcy individually and doing business as Clark Realty. The trial court severed the pending claims against them and proceeded to trial on the Gonzaleses' claim against the Callisons. The trial judge found that the Gonzaleses did not prove fraud, but he did find that the air conditioning was listed as central air and that Mrs. Callison had represented that it worked, and based on warranty he entered judgment against the Callisons in the amount of $1,493.50 plus costs.

Clark Realty then filed a motion for summary judgment based on the owners' discharges in bankruptcy, which motion was granted by the trial court.

The Callisons then filed a motion pursuant to K.S.A. 58-3069(a) for an order directing the Director to reimburse them the $1,493.50 judgment plus $35 court costs they paid. The trial

judge who heard the original action had left the bench and the trial judge who decided the motion examined the findings from that case and ordered the Director to reimburse the Callisons.

The Director and Clark Realty appeal and file a joint brief raising identical issues. Although it appears Clark Realty has standing to appeal, that point is immaterial because the identical issues are raised by the Director.

We agree with the trial judge that the Director cannot use the Clark Realty discharge in bankruptcy to defeat the Callisons' claim. Even a cursory reading of the legislative act providing for a revolving fund contemplates the possibility that a realtor may take bankruptcy. K.S.A. 58-3072. We do not perceive the Director's argument to be that a discharge in bankruptcy relieves the revolving fund of its statutory obligation. The issues are whether a final judgment was entered against the realtors in this case as contemplated by the legislature and whether Mr. Callison is barred from recovery by K.S.A. 58-3068(c)(2), which provides that:

"A person shall not be qualified to make a claim for recovery from the real estate recovery revolving fund, if . . . [t]he person is a licensed broker or salesperson who acted as principal or agent in the real estate transaction which is the subject of the claim."

Apparently the trial judge did not consider what effect K.S.A. 58-3068(c)(2) would have on the Callisons' right to recover. We have considered the Callisons' argument that "principal or agent" as used in 58-3068(c)(2) means "broker or salesperson" and thus is not applicable. If the legislature had intended that interpretation it would have used the terms again, as it did in 58-3068(c)(3). The Callisons' interpretation would render 58-3068(c)(3) superfluous. In our opinion, it was error for the trial judge not to have made findings concerning the applicability of 58-3068(c)(2).

The Director's main argument is that the Callisons have not met the requirements for eligibility for repayment from the revolving fund because 58-3068(b)(1) requires them to have a final judgment based on an act, or acts, set forth in the statute. The trial court found that the evidence presented at trial could have resulted in a judgment against the realtors if the action had not been barred by the bankruptcy court, thus reasoning that for

the purposes of recovery under the fund the final judgment requirement was fulfilled.

The ultimate question then becomes: Is the final judgment requirement of 58-3068(*b*)(1) fulfilled by a finding that the evidence presented could have resulted in a judgment?

Legislation which is remedial in nature is to be liberally construed to effectuate the purpose for which it was enacted. *Smith v. Marshall,* 225 Kan. 70, 587 P.2d 320 (1978). A statute which is designed to protect the public must be construed in light of the legislative intent and is entitled to broad interpretation. *Johnson v. Killion,* 178 Kan. 154, 283 P.2d 433 (1955).

Even keeping this liberal interpretation in mind, there are still several problems with the trial court's decision. First, the plain and unambiguous language of the statute requires a final judgment. K.S.A. 58-3068. The final judgment must be against a licensed broker or salesperson. K.S.A. 58-3072. Second, Majors and Parker were not involved in the trial between the Gonzaleses and the Callisons, thus no one was available to protect their interests. The trial court made its finding that absent the bankruptcy discharges the transcript of the original proceeding shows that Clark Realty may have violated the real estate act. Under 58-3068(*a*), (*b*)(1) and -3069, it is apparent the legislature contemplated that a potential claimant must first prove a violation of the act by a licensee in a court of competent jurisdiction, and afford the licensee all due process of law to dispute the claim, before being entitled to claim monies from the fund. Third, the action by the potential claimant against the licensee must result in a final judgment for K.S.A. 58-3071 to be effective. K.S.A. 58-3071 requires a claimant to assign the claimant's rights to the judgment to the director when the claimant has been paid by the fund. K.S.A. 58-3072 would also be rendered ineffective, because it requires revocation of a licensee's license only after payment from the fund to satisfy a judgment against a licensed broker or salesperson.

The trial court was correct in its decision that the bankruptcy act should not be allowed to defeat the movants' recovery from the fund, but the procedure it employed was incorrect. The trial court severed the third-party action against Clark Realty and then tried the action between the Gonzaleses and the Callisons. When the Callisons were found to be liable, the trial court did not proceed to determine Clark Realty's liability but instead

granted summary judgment based on its owners' discharges in bankruptcy.

It appears to us that the proper procedure would have been to allow or require Clark Realty to participate in the action, determine its liability and render judgment accordingly, but enter a perpetual stay of execution.

In *Matter of McGraw,* 18 Bankr. 140, 143 (Bankr. Wisc. 1982), the court said:

"11 U.S.C. § 524 requires a permanent injunction to be issued prohibiting the continuation of a civil suit against the debtor. However, the reach of 11 U.S.C. § 524 is limited. 11 U.S.C. § 524 states that a discharge 'operates as an injunction against . . . continuation of an action, . . . to collect, recover or offset any such debt as a *personal liability* of the debtor, or from *property of the debtor. . . .'* (Emphasis added.) Thus, the statutory language itself, places limits on the scope of the 11 U.S.C. § 524 injunction. The injunction is only required when the continuance of a civil suit will result in efforts to collect from the debtor or his property a judgment award."

When the law of a state requires a judgment against the bankrupt before direct action can be brought against an insurer, a plaintiff is free to pursue its action to judgment although the state court is required to enter a perpetual stay of execution in favor of the discharged bankrupt. *Mathews Cadillac, Inc. v. Phoenix of Hartford Ins. Co.,* 90 Cal. App. 3d 393, 153 Cal. Rptr. 267 (1979); *Matter of McGraw,* 18 Bankr. at 143.

In this case, however, summary judgment was granted to Clark Realty and the action was never pursued to judgment. This decision of the trial court was not appealed. Therefore it was not the bankruptcy act that precluded final judgment, but the trial court's application of the act. Thus, we find that the Callisons do not at this time have a final judgment within the meaning of 58-3068(b)(1) and the trial court committed reversible error in ordering the Director to reimburse the Callisons.

The Callisons argue that the Director knew of the lawsuit and had an opportunity to intervene. The real estate act does not require the Director to intervene and there is no sanction in the act for the Director's failure to intervene. The Callisons made no effort to join the Director to determine Clark Realty's responsibility.

The record before us is not complete and thus we make no comment on whether payment by the fund is barred by 58-

3068(*b*)(2) as construed in *First Nat'l Bank of Girard v. Coykendall,* 8 Kan. App. 2d 636, 664 P.2d 874 (1983).

Reversed and remanded with directions to vacate the order directing the Director to reimburse the Callisons for the amount of the judgment and court costs they paid to the Gonzaleses.