**In re William John GUTCHES and Jerry L.G. Wary, Debtors.**

**No. 08–20528.**

United States Bankruptcy Court, E.D. Pennsylvania.

July 28, 2009.

---

John A. Digiamberardino, Digiamberardino & Lutz, Wyomissing, PA, for Debtors.

Lynn E. Feldman, Eldman Law Offices PC, Allentown, PA, Trustee.

## STATEMENT OF REASONS IN SUPPORT OF ORDER DATED JULY 28.2009. DENYING THE MOTION OF VINCENTA BURKE-CORBIN TO REOPEN THIS BANKRUPTCY CASE

RICHARD E. FEHLING, Bankruptcy Judge.

### I. INTRODUCTION

On June 18, 2009, Vincenta Burke-Corbin, a creditor in this closed case,[1] filed her motion to reopen the Chapter 7 case of Debtors, William John Gutches and Jerry L.G. Wary, pursuant to Section 350(b) of the United States Bankruptcy Code, 11 U.S.C. § 350(b). Burke-Corbin wants to reopen this case to be able to pursue a certain state court negligence claim against Debtor(s)[2] arising out of an automobile accident that occurred before Debt-

---

**1.** This case was closed on June 20, 2008.

**2.** Throughout the motion, counsel for Burke-Corbin refers to the state court action against "Debtor(s)." I have reviewed the exhibits attached to Burke-Corbin's motion and it appears that only Mr. Gutches is a defendant in the state court action. Nevertheless, because Burke-Corbin's counsel refers to "Debtor(s)," I will do the same when I refer to the parties in the state court action.

ors had initiated this bankruptcy.[3] Burke–Corbin does not ask to collect damages from Debtors, but, rather, wants to proceed against Debtors' insurance carrier. Upon the filing of the motion to reopen and Debtors' response, I held a hearing on this matter on July 6, 2009. At the close of that hearing, I invited both parties to submit letter briefs by July 24, 2009.

Having received the parties' briefs, this matter is now ripe for my decision. Upon my consideration of the evidence presented at the hearing and the briefs of the parties, I find and conclude that Burke–Corbin has not proven any grounds to reopen this bankruptcy case. Therefore, I will deny Burke–Corbin's motion to reopen through the accompanying order. This Statement in Support constitutes my specific findings of fact and conclusions of law.

## II. DISCUSSION

■■■ Section 350(b) provides that a bankruptcy case may be reopened "to administer assets, to accord relief to the debtor, or for other cause." The decision to reopen a case is within the broad discretion of the bankruptcy court. *Zinchiak v. CIT Small Bus. Lending Corp. (In re Zinchiak)*, 406 F.3d 214, 223 (3d Cir.2005); *In re Janssen*, 396 B.R. 624, 634 (Bankr. E.D.Pa.2008); *In re Antonious*, 373 B.R. 400, 405 (Bankr.E.D.Pa.2007); *In re Otto*, 311 B.R. 43, 47 (Bankr.E.D.Pa.2004). "This discretion depends upon the circumstances of the individual case and accords with the equitable nature of all bankruptcy court proceedings." *Citizens Bank & Trust Co. v. Case (In the Matter of Case)*, 937 F.2d 1014, 1018 (5th Cir.1991). The moving party has the burden of demonstrating circumstances sufficient to justify reopening the case. *Janssen*, 396 B.R. at 634; *Antonious*, 373 B.R. at 405; *Otto*, 311 B.R. at 47. A case may be reopened to administer estate assets and to determine whether additional assets may be available for creditors of the estate. *Zinchiak*, 406 F.3d at 224; *Antonious*, 373 B.R. at 405 n. 4.

■■■ Burke–Corbin argues that she was not formally told about the existence of an insurance policy that might provide coverage for Debtor(s) regarding the automobile accident. Formal discovery relating to insurance coverage was initiated in the state court matter, but has not yet been answered. Debtors did not list the policy as an asset of the estate in their Schedule B, although they should have listed it.[4] Burke–Corbin admittedly, however, had actual and timely knowledge that Debtor(s) had insurance coverage. Burke–Corbin argues that, despite her actual knowledge of the insurance policy and its coverage of Debtor(s), sufficient cause exists to reopen the case.

Although Debtors did not list their insurance coverage as property of the estate, they disclosed in their Schedule J that they paid $83.33 each month as an automobile insurance expense. Most importantly, however, John McGrath, Esquire, the attorney retained by Debtors' insurance company to handle their auto accident case, testified and presented evidence showing that he had clearly and actually disclosed to Burke–Corbin the existence of the insurance policy and the coverage limits of Debtors. Mr. McGrath's May 12,

---

**3.** Burke–Corbin filed her state court suit against Debtor(s), in which she alleged negligence in connection with the automobile accident, in October 2007. Debtors filed their bankruptcy petition on March 13, 2008.

**4.** "Generally, insurance benefits which may be available to pay claims against a debtor constitute property of the estate." *In re Glunk*, 342 B.R. 717, 742 n. 39 (Bankr. E.D.Pa.2006), citing *In re Nutraquest*, 434 F.3d 639, 647 (3d Cir.2006).

2008 letter to Burke–Corbin's counsel stated:

> My clients' policy with State Farm provided coverage of $50,000 per person, $100,000 per accident.

Exhibit D–1.

Additionally, in the Case Management Memorandum prepared by Mr. McGrath in connection with the state court action, he clearly and actually disclosed the existence of an insurance policy and its coverage limits in Item 18. Mr. McGrath identified no issues that might have limited the availability of the policy to cover the claim. Mr. McGrath submitted the Memorandum to the state trial court and exchanged it with Burke–Corbin's counsel on or about March 31, 2008, the date of the state court litigation pretrial conference. Exhibit D–2.

The Debtors would suffer uncontradicted prejudice if the case were reopened, because this bankruptcy case would reappear on their credit reports as an open case. Their credit records would reflect the reopened bankruptcy for well over a year after it was originally closed in June 2008. Credit reports reflect an open bankruptcy as current until it is closed. Reopening the case would extend the time within which Debtors' credit records would be clouded by this bankruptcy. The time for their better credit health had started to run in June 2008, when this case was closed. Upon reopening this case, the bankruptcy cloud of a current case would return and would run into the Fall of this year and only then would it be marked closed in their credit reports. This would necessarily extend the time that their having filed bankruptcy would adversely cloud their credit record, thus delaying their ability to enjoy a timely "fresh start" that the bankruptcy laws are intended to give to those who seek its refuge.[5]

On the other side of the balance, I consider the possible prejudice to Burke–Corbin if the case is not reopened. First, I reiterate that Burke–Corbin's difficulties are self-created. Her counsel had received clear and actual notice that Debtors had insurance coverage in March and May 2008, well before this case was closed. For whatever reason, Burke–Corbin did not seek relief from the stay in this case to allow her to proceed against Debtor(s) in the state court action.

■ Second, and more important, Burke–Corbin is not prejudiced at all by a denial of her motion to reopen this case. I note with favor the decision of *In re The Loewen Group, Inc.*, No. Civ. A. 98–6740, 2004 WL 1853137, at *23–24 (E.D.Pa. Aug. 18, 2004), which is on point with the primary issue in this matter. District Court Judge O'Neill carefully examined the issue of proceeding against a debtor in non-bankruptcy litigation after the debtor had been discharged when the sole purpose of the litigation was to be able to collect the damages from a third party. Debtor

5. In her brief filed on July 24, 2009, Burke–Corbin suggests a mechanism that, she claims, would eliminate the prejudice to Debtors because her proposed order would not reopen this case. She suggests entering an order that simply grants relief from the automatic stay. Burke–Corbin's suggestion is off the mark for three critical reasons. First, the case is closed and no such order may be entered in a closed case. Second, no automatic stay exists at this time because the case is closed and a discharge has been granted.

*See Ruvacalba v. Munoz (In re Munoz)*, 287 B.R. 546, 554 (9th Cir. BAP 2002). Third, we have not yet had a hearing on the issue of granting relief from the automatic stay. The July 6, 2009 hearing was solely to consider the motion to reopen this case. The order suggested by Burke–Corbin would have been appropriate if she had timely sought relief from the automatic stay when she first had actual knowledge of the insurance coverage, which was while this case was open and before the discharge had been granted.

Loewen Group argued that its discharge under Section 524(a), 11 U.S.C. § 524(a), made it impossible for a plaintiff to maintain an action against Loewen Group as a defendant because the Section 524(a) discharge either (1) voided any suit against Loewen Group or (2) rendered moot any suit against Loewen Group. I quote liberally from Judge O'Neill's opinion:

> I have not found any case that considers whether a plaintiff may sue a bankrupt debtor whose debts have been discharged under 11 U.S.C. § 524(a) solely to establish the debtor's liability and collect from co-defendants under [the grounds asserted in the litigation]. Analogous cases, however, suggest that such a suit is permissible, and that I need not modify debtor defendant's § 524(a) injunction for the suit to proceed. [Citations omitted.] These decisions rely primarily on 11 U.S.C. §§ 524(a) and 524(e). Section 524(a)(2) says that a bankruptcy discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act to collect, recover, or offset any such debt as a personal liability of the debtor."

> Courts that have allowed suits to proceed against bankrupt defendants have reasoned that § 524(e) trumps § 524(a); § 524(e) states that "discharge of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." In other words, these courts have refused to permit bankruptcies to relieve third parties, typically insurers, from their obligations. . . .

\* \* \*

Loewen Group next argues that plaintiffs' claim is moot, because "it will never

be possible for defendant to provide any relief." [Citations omitted.] As a technical matter, this is true; shielded by its § 524(a) bankruptcy discharge, Loewen Group will never have to pay anything to plaintiffs. Loewen Group, however, ignores the cases that allowed plaintiffs to sue debtor defendants despite not being able to collect from them directly. [Citations omitted.]

*Loewen Group*, 2004 WL 1853137, at \*23–24. Judge O'Neill concluded that the litigation against Loewen Group could continue, its discharge notwithstanding.

Similarly, the Court in *In re Lembke*, 93 B.R. 701 (Bankr.D.N.D.1988). stated that the discharge of a debt in bankruptcy does not extinguish the debt itself but merely releases the debtor from personal liability. The debt continues to exist and can be collected from any other entity that may be liable. The bankruptcy discharge injunction "does not affect a personal injury claimant's efforts to recover from the debtor's insurer so long as the insurer covers all defense costs and all potential liability."[6] Id. at 702.

Finally, this position was reiterated in a decision offered by Debtors in their brief, in which they cited *Blackmon v. Crile*, No. 05–1030–MLB, 2007 WL 121402, at \*2 (D.Kan. Jan. 12, 2007). The court in *Blackmon* denied the former debtor's effort to have the case against her dismissed because she had received a discharge in a prior bankruptcy proceeding. The plaintiff in *Blackmon* intended to continue the litigation against debtor solely to be able to collect against debtor's employer. The court found as follows:

> While a discharge in bankruptcy precludes the continuation of an action against the debtor to the extent that the judgment determines the debtor's personal liability as to any discharged debt,

---

**6.** Mr. McGrath acknowledged that he had been retained and paid by Debtors' insurance carrier to defend Debtor(s) in the state court action.

see 11 U.S.C. § 524(a), the "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." [Citations omitted.] "It is well established that this provision permits a creditor to bring or continue an action directly against the debtor for the purpose of establishing the debtor's liability when, as here, establishment of that liability is a prerequisite to recovery from another entity." [Citations omitted.] The § 524(e) exception to the "post-discharge injunction hinges 'upon the condition that the debtor not be personally liable in away that would interfere with the debtor's fresh start in economic life.'" [Citation and footnote omitted.]
. . .

*Blackmon,* 2007 WL 121402, at *2.[7]

The decision in *Loewen Group* (the opinion of District Judge O'Neill in this district) and the decisions of the courts in *Munoz, Lembke* and *Blackmon* clearly support the proposition that Debtors' bankruptcy case need not be reopened to permit Burke–Cordin to resume the state court action against Debtor(s). In addition to the balance of the prejudice, I conclude that reopening this case is not necessary to permit Burke–Corbin to continue her litigation against Debtor(s) to establish the liability necessary to be able to proceed against Debtors' insurance carrier. Burke–Corbin should not face opposition from Debtor(s) in the state court action because they have actually advanced this *Loewen Group* argument to me by citing the *Blackmon* decision and other, similar cases.

### III. CONCLUSION

In light of these findings of fact and conclusions of law, I find that Burke–Cor-

bin had clear and direct actual notice of the existence and basic terms of Debtors' insurance policy and had ample opportunity to protect her interests in Debtors' bankruptcy case. I also find that Debtors would face significant prejudice if I reopened the case. I believe that Burke–Corbin would face no prejudice at all because *Loewen Group* and the other, similar cases, accurately describe her ability to proceed against Debtor(s) in the existing state court litigation. Therefore, pursuant to my broad discretion and the clear equities of this case, I conclude that the Burke–Corbin has not met her burden of demonstrating circumstances that justify reopening the case.

For these reasons, I will deny Burke–Corbin's motion to reopen the case. An appropriate Order follows.

### ORDER

AND NOW, this 28th day of July, 2009, upon my consideration of the motion filed by Vincenta Burke–Corbin on June 18, 2009, to reopen this bankruptcy case, the response to the motion filed by Debtors on June 26, 2009, the hearing on the motion, held on July 6, 2009, and the briefs of counsel filed in this matter, and based upon the findings of fact, conclusions of law, and rationale stated in the accompanying Statement of Reasons in Support of this Order,

IT IS HEREBY ORDERED that the that motion to reopen this bankruptcy case, filed by Vincenta Burke–Corbin, is DENIED.

---

**7.** *Accord Owaski v. Jet Florida Systems, Inc. (In re Jet Florida Systems, Inc.),* 883 F.2d 970, 976 (11th Cir.1989); *Munoz,* 287 B.R. at 556; *In re Patterson,* 297 B.R. 110, 114–15 (Bankr. E.D.Tenn.2003); and *In re Christian,* 180 B.R. 548, 550 (Bankr.E.D.Mo.1995).